OPINION SUTIN, Judge. Hamaatsa, Inc. filed an action against the Pueblo of San Felipe seeking a declaration that a road, which crossed Pueblo property that was acquired in fee simple, was a state public road. In an interlocutory appeal, the Pueblo contends that the district court erred in denying the Pueblo’s motion to dismiss for lack of subject matter jurisdiction based on sovereign immunity. We affirm. BACKGROUND The Complaint Hamaatsa’s complaint requests the district court to declare Northern R.S. 2477 (the road) a state public road. Further, as a member of the public and the owner of property contiguous to the road, Hamaatsa requests that the court declare that the Pueblo cannot restrict its use of the road. The complaint was filed in response to the Pueblo’s notice to Hamaatsa threatening to restrict Hamaatsa’s use of the road. The complaint alleges that the road was owned by the Bureau of Land Management (the BLM) since at least 1906, was constructed and used by the public from at least 1935 up to and including the date of the complaint, and was used by Hamaatsa and its predecessors in interest to access their property. The complaint further alleges that under 43 U.S.C. § 932 (1866), Rev. Stat. § 2477, the road has been a public road since at least 1906 or 1935, and because it was not retained by the United States, the road became vested in the public as a state highway, and it remains a public state highway because it has not been vacated. Although § 932 was repealed, the road was constructed before the repeal in 1976, the repeal expressly preserved the road, and the road remained a state highway pursuant to NMS A 1978, Section 67-2-1 (1905). The property through which the road runs was conveyed to the Pueblo in December 2001 by the BLM in fee simple. In that conveyance, the BLM reserved an easement along the road “for the full use as a road by the United States for public purposes.” By quitclaim deed, the BLM purported, in September 2002, to quitclaim its interest in the road to the Pueblo. The Motion to Dismiss The Pueblo moved, pursuant to Rule 1-012(B)(1) NMRA, to dismiss Hamaatsa’s complaint for lack of subject matter jurisdiction based on the doctrine of tribal sovereign immunity. At a district court hearing on the Pueblo’s motion to dismiss, much of the argument involved the question whether the action was in personam or in rem. The Pueblo argued that the action was for injunctive relief, affecting and altering the Pueblo’s interest in the fee simple parcel it had acquired, and that the action was therefore in personam. The Pueblo also argued that Hamaatsa’s action was in essence a quiet title action that would “materially. . . affect the ownership interest of the Pueblo in its property” and that “[t]o declare that the road, in fact, exists fundamentally alters the Pueblo’s property interest, ownership interest, in this property.” Hamaatsa responded that its action was for non-monetary declaratory relief and that it was not seeking an injunction. Hamaatsa’s counsel stated, “We have simply sought a declaration that this is a public road.” Hamaatsa presented argument and authority to support its view that the action was not, as the Pueblo had asserted, a quiet title action, but was an action purely in rem, arguing that “[tjhis case is all about in rem jurisdiction.” The court ruled simply that the action was in rem, and the court denied the Pueblo’s motion to dismiss. Additionally, the court granted leave for an interlocutory appeal. The Interlocutory Appeal This case comes to this Court through interlocutory appeal based on the district court’s denial of the Pueblo’s Rule 1-012(B)(1) motion to dismiss for lack of subject matter jurisdiction. Our review is de novo. Lu v. Educ. Trust Bd. of N.M., 2013-NMCA-010, ¶ 7, 293 P.3d 186. As conceded by the Pueblo in its argument to the district court and in its brief in chief on appeal, the Pueblo’s purely facial challenge to jurisdiction compels us to accept as true all material allegations of the complaint and also to construe the complaint in favor of the complaining party. Forest Guardians v. Powell, 2001-NMCA-028, ¶ 5, 130 N.M. 368, 24 P.3d 803; see Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995) (stating that when analyzing a facial attack under Federal Rule of Civil Procedure 12(b)(1), the court “must accept the allegations in the complaint as true”); Genberg v. Porter, 935 F. Supp. 2d 1094, 1102 (D. Colo. March 25, 2013) (same); In re Polyurethane Foam Antitrust Litig., 799 F. Supp. 2d 777, 791, 793 (N.D. Ohio 2011) (indicating that allegations that may seem conclusory in nature but are supported by factual allegations are not to be denied the presumption of truth but instead may be examined by the court “to gauge whether the remaining allegations, accepted as true, plausibly give rise to entitlement to relief’ (internal quotation marks and citation omitted)). The Pueblo nowhere argues that any particular allegation in the complaint is unworthy of being accepted as true for the purposes of the motion to dismiss. Accordingly, as this case comes to us, Hamaatsa’s action is to declare the road, alleged and conceded for the purposes of the motion to be a state public road, to be a state public road.[1] We review the district court’s denial of the Pueblo’s motion to dismiss as the case has come to us, but we decide it on grounds different from those relied upon by the district court. See Meiboom v. Watson, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 (indicating that the appellate courts may affirm a district court’s ruling on a ground different from that relied on by the district court). We see no reason to address the issue of in rem versus in personam, or, if the action is in rem, whether the Pueblo can nevertheless seek dismissal for lack of subject matter jurisdiction based on sovereign immunity.[2] By choosing to make its attack on Hamaatsa’s complaint a purely facial one, thereby conceding the truth of the allegations in the complaint, the Pueblo admitted the existence of a state public road. As we indicate later in the body of this Opinion, there is no basis for a sovereign immunity defense at this stage of the proceeding where it is presumed that the road in question is a state public road. DISCUSSION Notwithstanding its purely facial attack and admission of the truth of the allegations ofthe complaint, including that the road is a state public road, the Pueblo argues that sovereign immunity bars the action for lack of subject matter jurisdiction. Yet, the Pueblo offered no evidence of any property or governance interests whatsoever in the road or that the road, concededly a state public road, would threaten or otherwise affect its sovereignty. The Pueblo has not attempted any proof, for example, that even though the road is a state public road, a district court’s declaration of that fact would in any way undermine the Pueblo’s sovereignty or sovereign authority, infringe on any right of the Pueblo to govern itself or control its internal relations, or otherwise adversely affect its governmental, property, or treasury interests.[3] To our knowledge, no United States Supreme Court case or body of federal law, and no New Mexico case, is clearly determinative or constitutes binding precedent favoring the Pueblo under the particular circumstances here. This Court has considerable difficulty, at this Rule 1-012(B)(1) stage, construing the law to require dismissal for lack of subject matter jurisdiction based on sovereign immunity. In our view, the Pueblo’s invocation of sovereign immunity in a facial challenge at this stage of the proceedings is not supported by law. “Tribal sovereign immunity is ‘a necessary corollary to Indian sovereignty and self-governance[.]’ ” Wisconsin v. Ho-Chunk Nation, 512 F.3d 921, 928 (7th Cir. 2008) (quoting Three Affiliated Tribes of Ft. Berthold Res. v. Wold Eng’g, P.C., 476 U.S. 877, 894 (1986)). If common law sovereign immunity from suit is an attribute of sovereignty, one must wonder why immunity should exist in this case where the Pueblo has shown no other attribute of sovereignty — such as a property, treasury, or governance interest in or sovereign authority over the road — that could bestow immunity from inherent sovereignty. In this case, with no evidence showing that a significant aspect of the Pueblo’s inherent sovereignty or sovereign authority is adversely affected, we see no justifiable basis on which the Pueblo can draw immunity from inherent sovereignty. In our view, the issue in this case is a matter of state law, over which the district court has jurisdiction. See Jicarilla Apache Tribe, 1994-NMSC-104,^ 10-19 (stating that “[wjhether an easement — a public road at that — exists across land held in fee simple is clearly an issue of state law” and holding that Public Law 280 did not preempt “state[]court jurisdiction to adjudicate a preexisting interest in land that is purchased by an Indian tribe and then held by the tribe in fee simple”). We note that the United States Supreme Court supports the view that an Indian tribe cannot exercise jurisdiction over conduct on a public roadway. See Montana v. United States, 450 U.S. 544, 566 (1981) (making clear that a tribe cannot regulate the conduct of persons on land it does not own when there is no direct effect on the political or economic security of the tribe); see also Nevada v. Flicks, 533 U.S. 353, 359 (2001) (“Where nonmembers are concerned, the ‘exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation.’ ” (quoting Montana, 450 U.S. at 564)); Atkinson Trading Co. v. Shirley, 532 U.S. 645, 647 (2001) (holding, based on Montana, that “Indian tribes lack civil authority over... tribal attempts to tax nonmember activity occurring on non-Indian fee land”); Strate v. A-1 Contractors, 520 U.S. 438, 442, 459 (1997) (holding that a tribe cannot exercise jurisdiction and does not have adjudicatory authority over conduct on a public highway that runs through its reservation); South Dakota v. Bourland, 508 U.S. 679, 694-95, 697 (1993) (explaining that a tribe did not have authority to regulate non-Indian hunting and fishing on land that was located within the reservation, but was owned by the United States); Brendale v. Confederated Tribes & Bands of the Yakima Indian Nation, 492 U.S. 408, 430 (1989) (stating, in the context of a zoning dispute, that “[t]he governing principle is that the tribe has no authority itself, by way of tribal ordinance or actions in the tribal courts, to regulate the use of fee land”). The legal and practical effect of permitting the Pueblo to assert sovereign immunity in its facial challenge and at this stage of the proceedings would be to permit the Pueblo to assert control over a state public road, yet to deprive Hamaatsa, or any other member of the public, any opportunity for legal recourse. As noted in Jicarilla Apache Tribe, we must be mindful of the practical effects of the application of sovereign immunity as an unfettered bar to claims that patently do not infringe on tribal sovereignty. See 1994-NMSC-104, ¶ 21 (explaining that “[b]ecause it would concern a matter of state law, a complaint involving a disputed easement across a tract of land . . . would not be entertained in federal district court},]” and the practical effect of depriving state courts of jurisdiction over such matters is the “anomalous result” of denying tribal and non-tribal parties a judicial forum in which to settle their respective property rights). Jicarilla Apache Tribe supports the conclusion, at least in this stage of the proceedings, that the issue regarding the road is one of state law over which the district court has jurisdiction. Further, to permit a sovereign immunity bar at this facial attack stage of the proceedings would mean that, based on nothing more than the bare assertion of sovereignty, apueblo ortribe could acquire, in fee simple, subject to an existing state public road, one or more lot or acreage virtually anywhere in New Mexico and immediately deny the motoring public and all neighboring property owners access. And it means that no person whose property is, and perhaps has been for generations, contiguous to a public road before a fee simple acquisition of property through which the road runs, could invoke state court jurisdiction to at least obtain a judicial declaration, binding on a pueblo or tribe, that a road is a state public road. In our view, the Pueblo cannot have such carte blanche immunity on a Rule 1-012(B)(1) facial attack when it acquires property in fee simple subject to a state public road as it did here. “Suits against Indian tribes . . . remain a highly contentious issue.” Carole E. Goldberg, Rebecca Tsosie, Kevin K. Washburn & Elizabeth Rodke Washburn, American Indian Law: Native Nations and The Federal System 443 (6th ed. 2010). The circumstances here lend credence to Justice Stevens’ words in his concurring opinion in Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma (Potawatomi), 498 U.S. 505, 514 (1991) (Stevens, J., concurring).[4] He stated: The doctrine of sovereign immunity is founded upon an anachronistic fiction. In my opinion all Governments — federal, state, and tribal — should generally be accountable for their illegal conduct. . . . Nevertheless, I am not sure that the rule of tribal sovereign immunity extends to cases arising from a tribe’s conduct of commercial activity outside its own territory}.] Id. at 514-15 (Stevens, J., concurring) (citations omitted). Justice Stevens then correctly points out that the majority opinion in Potawatomi “in effect acknowledges limits to a tribe’s sovereign immunity, although it does not do so explicitly.” Id. at 515 (Stevens, J., concurring). Justice Stevens states: My purpose in writing separately is to emphasize thatthe Court’s holding in effect rejects the argument that this governmental entity — the [tjribe — is completely immune from legal process. By addressing the substance of the tax commission’s claim for prospective injunctive relief against the [t]ribe, the Court today recognizes that a tribe’s sovereign immunity from actions seeking money damages does not necessarily extend to actions seeking equitable relief. Id. at 515-16 (Stevens, J., concurring). The majority in Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751 (1998), discussed Potawatomi and in language also pertinent to the case now before this Court, stated: The doctrine of tribal immunity came under attack a few years ago in Potawatomi .... The petitioner there asked us to abandon or at least narrow the doctrine because tribal businesses had become far removed from tribal self-governance and internal affairs. We retained the doctrine, however, on the theory that Congress had failed to abrogate it in order to promote economic development and tribal self-sufficiency. The rationale, it must be said, can be challenged as inapposite to modern, wide-ranging tribal enterprises extending well beyond traditional tribal customs and' activities. Justice [Stevens], in a separate opinion, criticized tribal immunity as founded upon an anachronistic fiction and suggested it might not extend to off-reservation commercial activity. ... In our interdependent and mobile society . . . tribal immunity extends beyond what is needed to safeguard tribal self-governance. This is evident when tribes take part in the Nation’s commerce. Tribal enterprises now include ski resorts, gambling, and sales of cigarettes to non-Indians. In this economic context, immunity can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, as in the case of tort victims. Kiowa Tribe, 523 U.S. at 757-58 (internal quotation marks and citations omitted). In spite of its misgivings, the Court in Kiowa Tribe invoked sovereign immunity. Id. at 753, 760. Keeping with his view of sovereign immunity, Justice Stevens, in his dissent in Kiowa Tribe, with Justices Thomas and Ginsburg joining, stated: Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the [sjtate. There is no federal statute or treaty that provides petitioner . .. any immunity from the application of Oklahoma law to its off-reservation commercial activities. Nor, in my opinion, should this Court extend the judge-made doctrine of sovereign immunity to pre-empt the authority of the state courts to decide for themselves whether to accord such immunity to Indian tribes as a matter of comity. In sum, we have treated the doctrine of sovereign immunity from judicial jurisdiction as settled law, but in none of our cases have we applied the doctrine to purely off-reservation conduct. Despite the broad language used in prior cases, it is quite wrong for the Court to suggest that it is merely following precedent, for we have simply never considered whether atribe is immune from a suit that has no meaningful nexus to the tribe’s land or its sovereign functions. Moreover, none of our opinions has attempted to set forth any reasoned explanation for a distinction between the [sjtates’ power to regulate the off-reservation conduct of Indian tribes and the [sjtates’ power to adjudicate disputes arising out of such off-reservation conduct. Accordingly, while I agree with the Court that it is now too late to repudiate the doctrine entirely, for the following reasons[,j I would not extend the doctrine beyond its present contours. Id. at 760, 764 (internal quotation marks and citations omitted). The majority’s concerns and Justice Stevens’ dissent in Kiowa Tribe, read fully, should stimulate analysts to reasonably view the case now before this Court as one beyond the periphery of immunity, requiring affirmance of the district court’s denial of the Pueblo’s motion to dismiss. This is not a case in which a party suing a tribe has engaged in a contractual or commercial relationship with that tribe. No one is forced to enter into such relationships. Those entering into such relationships do so voluntarily, by choice, and they should know the legal risks. When a tribe acquires property in fee simple that envelops a state public road and subsequently denies access to existing property owners or other individuals, those excluded are innocent citizens who had no choice and cannot be held to have known or anticipated a legal risk of access denial and a dispositive facial assertion of sovereign immunity by an Indian tribe. In sum, the allegations of the complaint survive the Rule 1-012(B)(1) facial attack. The allegations in the complaint were presumed to be true for the purposes of the motion, and the Pueblo has not shown any factual, legal, or rational basis on which to invoke sovereign immunity in the face of those allegations — including the allegation, undisputed and fully supported by other allegations, that the road is a state public road. CONCLUSION We affirm the district court’s denial of the Pueblo’s motion to dismiss under Rule 1-012(B)(1), and we remand for further proceedings. IT IS SO ORDERED. JONATHAN B. SUTIN, Judge I CONCUR: J. MILES HANISEE, Judge JAMES J. WECHSLER, Judge, dissenting. The state or county has exclusive regulatory authority and jurisdiction over its roads. N.M. Const, art. V, § 14 (creating the state transportation commission); § 67-2-1 (“All roads and highways, except private roads, established in pursuance of any law of New Mexico, and roads dedicated to public use, that have not been vacated or abandoned, and such other roads as are recognized and maintained by the corporate authorities of any county in New Mexico, are hereby declared to be public highways.”); NMSA1978, § 67-3-11 (2003) (authorizing the state transportation commission “to make all rules and regulations as may be necessary to carry out the provisions of’ the Highway Department Organization Act, NMSA 1978, §§ 67-1-1 to -3 (1977)); NMSA 1978, § 67-3-12 (2006) (describing the powers and duties of the state transportation commission); Jicarilla Apache Tribe v. Bd. of Cnty. Comm'rs, 1994-NMSC-104, ¶ 21, 118 N.M. 550, 883 P.2d 136 (explaining that state courts have exclusive jurisdiction over matters relating to public roads). If the attack is facial only, and if the facts alleged show that in personam jurisdiction is involved, it seems clear that, facially, the tribe should likely be dismissed. If the attack is factual, and if the facts show that in personam jurisdiction is involved, it seems clear that factually, the tribe should likely be dismissed. If the attack is facial only, and if the facts alleged show that in rem jurisdiction is involved, the court would then be required to resolve whether the tribe should nevertheless be dismissed pursuant to its sovereign immunity. The same holds if the attack is factual and the facts show that in rem jurisdiction is involved. If persuasive law holds that even if the facts alleged or proved show that the action is in rem, the tribe still has sovereign immunity, it would appear that there is no reason to ever get into the question whether the action is in rem, since whether it is in rem or not in rem would be irrelevant. Hamaatsa argued in the district court that it filed the action upon being threatened with blockage because the Pueblo was in the process of attempting to have its fee simple parcel placed in trust. We proceed with the understanding that, as the Southwest Director of the Bureau of Indian Affairs (BIA) concluded, favorably to Hamaatsa, the BIA would not take the fee simple parcel in trust until the present dispute over the road is resolved. See Hamaatsa, Inc. v. Sw. Reg’l Dir., 55 IBIA 132, 132-33 (2012) (order vacating decisions and dismissing appeal). While there exists no “unequivocal expression” in the present case manifesting an intent to relinquish tribal immunity, see Potawatomi, 498 U.S. at 509 (stating that to relinquish its immunity, a tribe’s waiver must be “clear”), one would nevertheless reasonably inquire whether a tribe that obtains aproperty beyond reservation boundaries in fee simple, knowing that the property is subject to a state public road, should be held at least at the Rule 1-012(B)(1) facial attack stage to have knowingly relinquished immunity if sued for threatening to block or blocking public access, particularly when the access being blocked or threatened has not been shown to adversely affect significant tribal governance or other aspects of inherent tribal sovereignty.