IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **June 5, 2017**

**NO. 35,161**

**MICHAEL GZASKOW and**
**FRANCOISE BECKER,**

Plaintiffs-Appellants,

v.

**PUBLIC EMPLOYEES RETIREMENT**
**BOARD and EACH MEMBER OF THE**
**BOARD IN HIS OR HER OFFICIAL**
**CAPACITY,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Judge**

VanAmberg, Rogers, Abeita & Gomez, LLP
Ronald J. VanAmberg
Santa Fe, NM

for Appellants

Robles, Rael & Anaya, PC
Charles H. Rennick
Albuquerque, NM

New Mexico Public Employees Retirement Association
Misty M. Braswell
Santa Fe, NM

for Appellees

**OPINION**

**BOHNHOFF, Judge.**

{1}     In 2011, Plaintiff Michael Gzaskow retired from employment with the State of New Mexico and began receiving retirement pension benefits pursuant to the Public Employees Retirement Act (the Act), NMSA 1978, §§ 10-11-1 to -142 (1987, as amended through 2016). At the time of his retirement he was divorced, but he named Plaintiff Francoise Becker to receive retirement benefits in the event of his death; a few months after his retirement, Gzaskow married Becker. In late 2014, shortly before he took an extended overseas trip with Becker, Gzaskow executed and delivered to the Public Employees Retirement Association (PERA) a form that exercised a "one-time irrevocable option to deselect" Becker as his survivor beneficiary and designate his daughter, Sabrina Gzaskow (Daughter), as the survivor beneficiary. Following his return from the trip, Gzaskow advised PERA that the deselection of Becker and designation of Daughter was a mistake and requested that the action be voided. PERA declined to do so, taking the position that the action was not reversible. Gzaskow and Becker (collectively, Plaintiffs) then brought suit in district court (the Complaint) against the Public Employees Retirement Board (PERB), which is responsible for administering PERA, asserting a right to cancellation of the deselection of Becker as survivor beneficiary and seeking declaratory, injunctive, and equitable relief. PERB

moved to dismiss the Complaint for lack of subject matter jurisdiction, arguing that Plaintiffs had failed to exhaust the administrative remedy afforded under the Act. The district court granted PERB's motion to dismiss and Plaintiffs now appeal. We affirm.

## I.    BACKGROUND

### A.    The Act

{2}    Through the Act, the New Mexico Legislature has established a program whereby employees of the State of New Mexico and other public agencies may receive retirement pensions. Participating employees are "members" of PERA and earn the right to receive a pension by meeting various age and service credit requirements. *See* §§ 10-11-2(M), -3(A); *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 5, 117 N.M. 346, 871 P.2d 1352. The Act establishes PERB to administer the Act and manage the retirement pension program and PERA. Section 10-11-130.

{3}    When a member who qualifies for a pension retires, he or she must elect one of four payment options or "Forms." Section 10-11-116(A). The Forms of Payment are set forth in Section 10-11-117. Under Form of Payment A, the "[s]traight life pension," the retiree receives a monthly payment and upon his or her death the payments cease. Section 10-11-117(A). Under Form of Payment B, "[l]ife payments with full continuation to one survivor beneficiary," the retiree receives a reduced

2

monthly payment, but upon his or her death a survivor beneficiary will receive the same payment until the survivor's death. Section 10-11-117(B). Under Form of Payment C, "[l]ife payment[s] with one-half continuation to one survivor beneficiary," the retiree receives a reduced monthly payment in an amount greater than that received under Form of Payment B, and upon his or her death a survivor beneficiary will receive one-half of that payment. Section 10-11-117(C). Under Form of Payment D, "[l]ife payments with temporary survivor benefits for children," the retiree receives a reduced monthly payment, and upon his or her death each "declared eligible child" of the retiree is paid a share of the retiree's monthly payment until death or age twenty-five, whichever occurs first. Section 10-11-117(D). Form of Payment A is the default payment option if the retiree is not married at the time of retirement and does not elect another form of payment; Form of Payment C is the default payment option if the retiree is married at the time of retirement and does not elect another form of payment. Section 10-11-116(A)(1), (2). Under each of the Forms of Payment, the pension payments are calculated to have the same overall "actuarial present value" as Form of Payment A. Section 10-11-116(B).

{4} In addition to selecting a form of payment (other than Form of Payment A), when a member retires he or she will name the survivor beneficiary (or beneficiaries, in the case of more than one declared eligible child under Form of Payment D).

3

Section 10-11-116(A). If the member is married, PERA must obtain the spouse's written consent to the election of form of payment as well as the designation of survivor beneficiary; in the absence of such consent, the election and designation are not effective. *Id.*

{5}     "An election of form of payment may not be changed after the date the first pension payment is made." *Id*. Further, after the date of the first pension payment, the survivor beneficiary (or beneficiaries) may not be changed except as provided in Section 10-11-116(C), (D), and (E). Subsection C provides that a retiree who is being paid under Form of Payment B or C with his or her spouse as the designated survivor beneficiary may, upon becoming *divorced*, elect to have future payments made under Form of Payment A. Alternatively, Subsection D provides that a retiree who is being paid under Form of Payment B or C may, upon the *death* of his or her designated survivor beneficiary, "exercise a one-time irrevocable option" to designate another individual as the survivor beneficiary. Subsection E provides that a retiree who is being paid under Form of Payment B or C with a living, designated, survivor beneficiary other than his or her spouse or former spouse "may exercise a one-time irrevocable option to deselect the designated beneficiary" and either designate another survivor beneficiary or have future payments made under Form of Payment A. Section 10-1-116(E).

4

{6}     While a PERA member is employed, his or her spouse ordinarily acquires a community property interest in the member's pension benefit. *See generally* NMSA 1978, § 40-3-8(B) (1990) (defining community property); *Ruggles v. Ruggles*, 1993-NMSC-043, ¶¶ 14-32, 116 N.M. 52, 860 P.2d 182 (discussing divorcing spouses' community property interest in employer-sponsored retirement plans); *cf. Martinez v. Pub. Emps. Ret. Ass'n*, 2012-NMCA-096, ¶¶ 28-36, 286 P.3d 613 (discussing parameters of widowed spouse's statutory interest in PERA survivor benefits). The Act recognizes a spouse's interests in PERA benefits in various ways. First, as mentioned above, Section 10-11-116(A)(2) provides that if a member who is married at the time of his or her retirement does not designate another form of payment, the default is Form of Payment C, life payment with one-half continuation to one survivor beneficiary, with the member's spouse as the survivor beneficiary. Second, again as stated above, Section 10-11-116(A) provides that if the member is married, the consent of member's spouse is necessary to an election of the form of payment and designation of any survivor beneficiary other than the spouse. Third, Section 10-11-136 provides that, at the time of divorce, the court handling the divorce may provide for a division of the marital community's interest in the PERA pension and other benefits.

{7}     Section 10-11-120 addresses denials of claims for benefits under the Act.

Benefit claimants shall be notified in writing, with explanation, of a denial of a claim for benefits. Following receipt of the notice,

> [a] claimant may appeal the denial and request a hearing. The appeal shall be in writing filed with the association within ninety days of the denial. . . . The retirement board shall schedule a de novo hearing of the appeal before the retirement board or, at the discretion of the retirement board, a designated hearing officer or committee of the retirement board within sixty days of receipt of the appeal. A final decision on the matter being appealed shall be made by the retirement board.

Section 10-11-120(A). Regulations promulgated by the PERB authorize representation by legal counsel, limited discovery including depositions as authorized by the hearing officer, issuance of subpoenas to compel the production of documents and attendance of witnesses, direct and cross examination of witnesses under oath, and transcription of the hearing by a court reporter. 2.80.1500.10(C)(2), (3), (5) NMAC. A dissatisfied claimant may appeal a final decision of PERB pursuant to the provisions of NMSA 1978, Section 39-3-1.1 (1999), which generally provides for record review of administrative agency decisions. Section 10-11-120(B). *See, e.g.*, *Johnson v. Pub. Emps. Ret. Bd.*, 1998-NMCA-174, ¶ 10, 126 N.M. 282, 968 P.2d 793. ("Appeals from decisions of the Board denying disability retirement benefits are reviewed on the record made before the Board.").

**B.      Factual History**

{8}      The Complaint alleges the following: Gzaskow retired from employment as a

physician with the State of New Mexico on January 1, 2011. At that time Gzaskow was divorced. On his PERA retirement application form he selected Form of Payment C and designated Becker as his survivor beneficiary. Plaintiffs were then married on April 15, 2011. Prior to the marriage, Plaintiffs entered into a pre-nuptial agreement: they agreed that Becker would be the designated survivor beneficiary with respect to Gzaskow's PERA benefits, but that she would distribute to Gzaskow's children a portion of any such benefits that she received.

{9}     From time to time thereafter, Plaintiffs took extended trips. Gzaskow claims that he spoke with PERA personnel and discussed with them how to address his retirement benefits in the event both he and Becker were to die while on these trips. Gzaskow claims that he was told that he could pay PERA a $100 fee and have his benefits provisionally recalculated on the assumption that, pursuant to Section 10-11-116(E)(1), he deselected Becker as survivor beneficiary and designated Daughter as the new survivor beneficiary. Gzaskow also claims that he was told that if he and Becker both died while on a trip, Daughter would become the beneficiary if the recalculation had been done. Gzaskow had his benefits provisionally recalculated several times: each time PERA would prepare and provide to Gzaskow a form to accomplish the deselection and new designation. The form would show the recalculated pension and survivor benefit payments for Gzaskow and Daughter:

because Daughter was younger than Becker, and in accordance with the requirement in Section 10-11-116(E)(1)(b) that the pension benefit's overall actuarial present value remain the same, Gzaskow's new pension payment would be a reduced amount. The form stated in bold font:

> **This one-time change to a new beneficiary or change to Form of Payment A is Irrevocable.**
>
> **. . . .**
>
> **I have read and understand that this is a one-time removal and selection of a new beneficiary or selection of Form of Payment A. By choosing one of the options above, this will change my beneficiary or payment option until my death or the death of my beneficiary.**

When preparing for extended travel, Gzaskow would execute and give the form to Daughter, with the understanding that she would deliver it to PERA in the event he and Becker died during their travels.

{10}  In October 2014, Plaintiffs planned a trip to Vietnam. Gzaskow repeated the process of having PERA recalculate his retirement benefits if he deselected Becker and designated Daughter as the new survivor beneficiary. This time, however, Gzaskow not only signed the form on October 14, 2014, but also—he claims, mistakenly—delivered it to PERA.

{11}  On November 20, 2014, while Plaintiffs were in Vietnam, PERA sent Gzaskow a letter, acknowledging receipt of the deselection of Becker and new designation of

8

Daughter as Gzaskow's survivor beneficiary. The letter restated Gzaskow's reduced pension payment that had been set forth on the form that he had signed and delivered to PERA. The monthly payment was approximately $1,700 less than his pre-October 14, 2014 pension benefit. Upon returning from the trip and reading the letter, Gzaskow notified PERA that there was a mistake, that he had not intended to make the deselection of Becker and the new designation of Daughter, and requested that the change be canceled. Gzaskow alleges that PERA personnel knew that Gzaskow was attempting to protect himself should he and Becker die in a common incident by repeatedly initiating the process of deselecting Becker, and that he did not intend to replace Becker as the survivor beneficiary if she was still alive. Gzaskow asserted that under his pre-nuptial agreement with Becker, Becker could not be removed as his survivor beneficiary, and as a result of his mistake he was in breach of that agreement. Gzaskow also provided PERA with an affidavit signed by Daughter renouncing the beneficiary designation. However, PERA declined to cancel the deselection of Becker and designation of Daughter as the new survivor beneficiary. PERA took the position that, Gzaskow having delivered the executed form to PERA, the action was irrevocable, and that under the Act and the regulations PERB had promulgated to implement the Act, nothing could be done to reverse the deselection.

**C.    Procedural History**

{12} Following an exchange of correspondence between counsel for the parties, Plaintiffs filed the Complaint in the First Judicial District Court in Santa Fe, New Mexico on March 30, 2015. The Complaint alleged the facts set forth above, and then articulated five counts that seek overlapping relief. Distilled to its essence, the Complaint asserts the following:

(1) Pursuant to Section 10-11-116(A), discussed above, Becker's consent was a necessary predicate to any deselection of her as Gzaskow's survivor beneficiary. Because she did not give her consent, the court should declare Gzaskow's deselection was void and canceled, and that Gzaskow's pre-October 14, 2014 pension benefit should be restored.

(2) A PERB regulation, 2.80.1100.11 NMAC, identifies a number of documents (e.g., a statement as to whether the previous beneficiary is still living, a copy of the new beneficiary's birth certificate, and certain divorce proceeding documents) that must accompany the delivery of a deselection form. Because Gzaskow did not provide these documents to PERA on October 14, 2014, the court should declare the deselection void and canceled, and Gzaskow's pre-October 14, 2014 pension benefit should be restored.

(3) Alternatively, because the deselection form was signed by mistake, Plaintiffs will suffer severe prejudice if the mistake is not remedied, and because PERA

would not be prejudiced by returning to the pre-October 14, 2014 survivor designation, the court should exercise its equity jurisdiction and enjoin PERA to return Becker to her pre-October 14, 2014 status as Gzaskow's survivor beneficiary and restore Gzaskow's pre-October 14, 2014 retirement benefits.

{13} PERB initially responded to the Complaint by moving to dismiss for lack of subject matter jurisdiction based on Plaintiffs' failure to exhaust their administrative remedies under Section 10-11-120. PERB subsequently filed an answer to the Complaint as well. In PERB's memorandum of law in support of its motion to dismiss and its answer, PERB disputed a number of Plaintiffs' factual allegations: whether Gzaskow had spoken with PERA personnel about provisionally signing a beneficiary deselection form to address the possibility that he and Becker both could die during their travels; whether the paperwork listed in 2.80.1100.11 NMAC was provided to PERA; fundamentally, whether Gzaskow's October 14, 2014 execution and delivery of the deselection form was a mistake, i.e., whether he in fact intended to take that step; and whether PERA would be financially impacted by voiding and canceling of the deselection.

{14} Plaintiffs responded in opposition to the motion to dismiss, generally articulating two arguments. First, Plaintiffs argued that PERB lacked authority to grant an equitable remedy to Gzaskow because it is a quasi-judicial administrative

11

agency, and that the exhaustion of administrative remedies does not apply to claims over which an administrative agency lacks jurisdiction. Second, Plaintiffs argued that their claim was properly brought under the Declaratory Judgment Act, NMSA 1978, Sections 44-6-1 to -15 (1975). They cited, as authority for exempting such claims from the exhaustion requirement, *Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 26, 142 N.M. 786, 171 P.3d 300, and the Declaratory Judgment Act.

{15}     Plaintiffs also moved for summary judgment. In that motion, Plaintiffs advanced their substantive arguments that underlie the Complaint: Gzaskow's declaration was invalid because Becker did not give her consent and the documentation specified in 2.80.1100.11 NMAC did not accompany the deselection form. Alternatively, because the deselection form was signed by mistake, Plaintiffs will suffer severe prejudice if the mistake is not remedied, and because PERA would not be prejudiced by returning to the pre-October 14, 2014 survivor designation, the court should exercise its equity jurisdiction and enjoin PERA to return Becker to her pre-October 14, 2014 status as Gzaskow's survivor beneficiary and restore Gzaskow's pre-October 14, 2014 pension benefit.

{16}     PERB responded in opposition to Plaintiffs' summary judgment motion, again disputing Plaintiffs' version of the facts as well as reiterating the same legal positions that it first signaled in its motion to dismiss. In particular, PERB argued that, because

persons who become spouses after retirement have no community property interest in the pension benefit, Section 10-11-116(A)'s spousal consent requirement is intended to, and should be construed to, extend only to persons who are spouses prior to the member's retirement. It pointed out that PERB's regulations reflect this construction. *See* 2.80.1100.11(C) NMAC (explaining that spousal consent is required for post-retirement selection of new beneficiary only if retired member was married at the time of retirement and remains married to that person).[1] PERB also argued that the question of whether it has the authority to grant equitable relief was moot, because Plaintiffs had not articulated a legal claim upon which their request for equitable relief is based. PERB asserted that the equitable relief Plaintiffs requested, that Gzaskow's change of beneficiary be rescinded and his original benefit amount be reinstated, would be granted by PERB only upon a proper legal showing which, PERB went on to argue, Plaintiffs had not articulated.

{17}    The district court heard the motions together. It granted PERB's motion to dismiss and denied, as moot, Plaintiffs' motion for summary judgment. Plaintiffs

---

[1]This construction of the scope of Section 10-11-116(A)'s spousal consent requirement presumably is the answer to the question why PERB ever permitted Gzaskow to use Section 10-11-116(E) to deselect Becker in the first place, given that Becker had been his spouse since April 2011. But the question remains why Gzaskow thought he could engage in the deselection exercise, given his claimed literal understanding of the provision to apply broadly to any person who is a spouse at the time of the deselection.

13

timely filed their notice of appeal.

**II.    DISCUSSION**

**A.    The Doctrine of Exhaustion of Administrative Remedies and *Smith v. City of Santa Fe*'s Declaratory Judgment Exception**

{18}    The New Mexico Constitution broadly grants district courts original jurisdiction to hear "all matters and causes not excepted in this constitution[.]" N.M. Const., art. VI, § 13. However, based on separation of powers considerations and due respect for the executive branch, our Supreme Court repeatedly has determined that district courts lack subject matter jurisdiction where the plaintiff has failed to exhaust available administrative remedies. *See New Energy Econ., Inc. v. Shoobridge*, 2010-NMSC-049, ¶ 10, 149 N.M. 42, 243 P.3d 746 (stating that the doctrine of separation of powers is implicit to our Supreme Court's reasoning in its cases "addressing the relationship between administrative proceedings and declaratory judgment actions"). "Under the exhaustion of administrative remedies doctrine, where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Smith*, 2007-NMSC-055, ¶ 26 (alteration, internal quotation marks, and citation omitted); *accord*, *State Racing Comm'n v. McManus*, 1970-NMSC-134, ¶ 17, 82 N.M. 108, 476 P.2d 767 (reversing district court issuance of writ of prohibition); *Associated Petroleum Transp., Ltd. v.*

14

*Shepard*, 1949-NMSC-002, ¶ 12, 53 N.M. 52, 201 P.2d 772 ("The plaintiffs are required to exhaust such remedies as are accorded them by the law before resorting to the courts.").

{19} In *Smith*, our Supreme Court noted several previously-recognized exceptions to the exhaustion of administrative remedies rule. The exhaustion doctrine (1) "does not apply in relation to a question which, even if properly determinable by an administrative tribunal, involves a question of law, rather than one of fact"; and (2) "exhaustion of remedies does not require the initiation of and participation in proceedings in respect to which an administrative tribunal clearly lacks jurisdiction, or which are vain and futile." 2007-NMSC-055, ¶ 27 (internal quotation marks and citations omitted). The court also addressed, however, whether to recognize a new exception to the rule for actions brought pursuant to the Declaratory Judgment Act. The court noted that, the "Declaratory Judgment Act is a special proceeding that grants the district courts the 'power to declare rights, status and other legal relations whether or not further relief is or could be claimed' " and that it is "intended to be liberally construed and administered as a remedial measure." *Smith*, 2007-NMSC-055, ¶ 13 (quoting Section 44-6-2). The court noted in particular that, pursuant to Section 44-6-4, the Declaratory Judgment Act specifically authorizes district courts to construe and determine the validity of statutes and local laws. *Smith*, 2007-NMSC-

15

005, ¶ 14. On the basis of these considerations the court recognized a declaratory judgment exception to the exhaustion of administrative remedies rule for declaratory judgment actions: "[the p]laintiffs' decision to use a declaratory judgment action as their method for challenging the [c]ity's authority to regulate the permitting of domestic water wells appears to fall well within the perimeters of what the Declaratory Judgment Act was intended to encompass." *Smith*, 2007-NMSC-055, ¶ 15. *See also Rainaldi v. Pub. Emps. Ret. Bd.*, 1993-NMSC-028, ¶¶ 3, 4, 115 N.M. 650, 857 P.2d 761 (holding that the district court had jurisdiction under N.M. Const. art. VI, § 13, and §§ 44-6-4, -13, to hear suit for declaration of rights to retirement benefits).

{20}    Importantly, however, our Supreme Court then immediately qualified the declaratory judgment exception:

> That said, however, we must remain mindful of some important limitations on the use of declaratory judgment actions to review the propriety of administrative actions. In particular . . . , we caution against using a declaratory judgment action to challenge or review administrative actions if such an approach would foreclose any necessary fact-finding by the administrative entity, discourage reliance on any special expertise that may exist at the administrative level, disregard an exclusive statutory scheme for the review of administrative decisions, or circumvent procedural or substantive limitations that would otherwise limit review through means other than a declaratory judgment action.
>
> Accordingly, a declaratory judgment action challenging an administrative entity's authority to act ordinarily should be limited to

16

purely legal issues that do not require fact-finding by the administrative entity.

*Smith*, 2007-NMSC-055*, ¶¶* 15-16. *See also New Energy Econ.*, 2010-NMSC-049, ¶ 12 ("[W]hen the matter at issue (1) is purely legal, (2) requires no specialized agency fact-finding, and (3) there is no exclusive statutory remedy, it is a proper matter for a declaratory judgment action and does not require exhaustion of administrative remedies.").

**B.       Plaintiffs Must Exhaust Their Administrative Remedy Under the Act**

{21}    Plaintiffs argue that, because they seek declaratory relief, the exception recognized in *Smith* exempts them from exhausting the administrative remedy under Section 10-11-120(B). They argue as well that PERB has only quasi-judicial authority, which does not encompass equitable remedies, and therefore they are free to pursue that relief as well in district court. We are not persuaded.

**1.       Standard of Review**

{22}    "Whether a court has jurisdiction to hear a particular matter is a question of law that we review de novo." *El Castillo Ret. Residences v. Martinez*, 2015-NMCA-041, ¶ 13, 346 P.3d 1164. This proposition, however, begs the question how a district court is to resolve a challenge to its jurisdiction. The answer depends on whether or not the challenge is fact-based:

In reviewing a facial [i.e., non-fact-based] attack on the complaint, a

17

district court must accept the allegations in the complaint as true. In contrast, in a factual attack, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.

. . . .

When the challenge is factual, a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts[.]

*South v. Lujan*, 2014-NMCA-109, ¶¶ 8-9, 336 P.3d 1000 (alterations, internal quotation marks, and citation omitted). *See also Hamaatsa, Inc. v. Pueblo of San Felipe*, 2013-NMCA-094, ¶ 9, 310 P.3d 631 (stating that on purely facial challenge to jurisdiction, the court will accept as true all material allegations of the complaint), *rev'd on other grounds by* 2017-NMSC-007, 388 P.3d 977.

{23} This standard of review necessarily must be modified in the context of a motion to dismiss for lack of subject matter jurisdiction based on failure to exhaust administrative remedies, because, as will be discussed below, one of the relevant factors that enters into the exhaustion analysis is whether there are disputed fact issues. As to that factor, Plaintiff's challenge effectively remains purely facial: Plaintiff's contention is simply that the pleadings and other papers in the record do not reveal a fact dispute. With the possible exception of futility (which has not been asserted in this proceeding), the other factors that enter into the jurisdictional

18

analysis—whether the administrative agency itself lacks jurisdiction, whether agency expertise would assist the agency in resolving the dispute, the exclusivity of the statutory scheme for review of administrative decisions, or other procedural or substantive limitations on review—are all facial as well. *See Smith*, 2007-NMSC-055, ¶¶ 15, 26. Thus, our review, though de novo, is facial and limited to the record. We need not resolve any factual contentions.

**2.      Section 10-11-120 Provides an Exclusive Remedy for the Denial of Benefits Under the Act**

{24}      Section 10-11-120 authorizes a benefit claimant to pursue an administrative appeal before PERB, followed by a judicial appeal before the district court, in the event his or her benefit claim is denied. As a threshold issue, Plaintiffs contend that their claims do not involve a denial of benefits, because the issue is whether Becker was effectively deselected as a survivor beneficiary and whether, even if effective, the deselection nevertheless should be reversed. We think Plaintiffs' reading of Section 10-11-120 is too narrow; it grants appeal rights to all benefit claimants, not just members, so it encompasses Becker as well as Gzaskow. Further, PERA's action not only has denied Becker her contingent interest in receiving a survivor benefit, but, more immediately—as a consequence of the deselection—Gzaskow's current monthly pension payment has been reduced by approximately $1,700. Both consequences constitute benefit denials, and therefore Section 10-11-120 affords Plaintiffs a

19

remedy.

{25}     The question under *Smith*, however, is whether Section 10-11-120's scheme for the review of administrative decisions is *exclusive. Smith*, 2007-NMSC-055, ¶¶ 15, 27. "The exclusivity of any statutory administrative remedy turns on legislative intent." *Barreras v. N.M. Corr. Dep't.*, 2003-NMCA-027, ¶ 9, 133 N.M. 313, 62 P.3d 770. The absence of explicit language stating that the remedy is exclusive is not dispositive. *Id.* ¶ 11. Rather, we will look to "the comprehensiveness of the administrative scheme, the availability of judicial review, and the completeness of the administrative remedies afforded." *Id.* The test ultimately is whether the administrative remedy is "plain, adequate, and complete." *Chavez v. City of Albuquerque*, 1998-NMCA-004, ¶ 14, 124 N.M. 479, 952 P.2d 474.

{26}     Particularly when the procedural provisions of 2.80.1500.10 NMAC (the validity of which Plaintiffs do not question) are considered, Section 10-11-120's administrative appeal scheme is comprehensive. It generally grants PERB authority to review and, if appropriate, rectify PERA benefit denials. As stated above, the statutory appeal is open to all persons who might claim a benefit and encompasses all agency actions that would operate to deny benefits. In the absence of any constraining language, we also understand that PERB would possess full authority to act to reverse, or otherwise remedy, agency actions to the extent permitted by the Act itself.

{27} Section 10-11-120 also provides for judicial review pursuant to NMSA 1978, Section 39-3-1.1 (1999). *Compare State ex rel. Regents of E. N.M. Univ. v. Baca*, 2008-NMSC-047, ¶¶ 13, 22, 144 N.M. 530, 189 P.3d 663 (stating that the Procurement Code grants specific statutory rights to judicial review of bid protest decision), *and Barreras*, 2003-NMCA-027, ¶ 13 (stating that the "State Personnel Act makes express provision for judicial review of [State Personnel Board] decisions"), *with Chavez*, 1998-NMCA-004, ¶ 18 (noting that Municipal Code does not provide for judicial review of municipal personnel board decisions).

{28} Finally, the administrative remedy under Section 10-11-120 is complete. As is discussed below, to the extent the Act would permit cancellation or other reversal of the deselection of Becker as Gzaskow's survivor beneficiary, PERB would possess authority to take that action, and a court acting under its equitable jurisdiction could provide no further remedy. Thus, not only is the administrative remedy complete, any judicial remedy would be redundant and thus unnecessary.

{29} For these reasons, therefore, we believe that Plaintiffs have a remedy under Section 10-11-120 to challenge PERA's refusal to reverse the deselection of Becker as Gzaskow's survivor beneficiary, and that such remedy is exclusive.

**3. Fact Questions Are Present**

{30} In its order dismissing the Complaint, the district court found that, "Plaintiffs'

21

claims require factual determinations that should be made within the hearing process provided at the administrative level." We agree that multiple disputed issues of material fact constitute an additional reason why Plaintiffs must exhaust their administrative remedies.

{31}    First, in the Complaint, Plaintiffs alleged that Gzaskow had discussed with PERA personnel the idea of preparing, dating, and signing—but not delivering to PERA and instead leaving with Daughter—before they left on an extended trip, a provisional or contingent deselection of Becker as his survivor beneficiary and designation of Daughter as the new survivor beneficiary. The suggestion is that PERA acquiesced in, if not encouraged, a tactic that could significantly enhance the aggregate monetary benefit paid to Gzaskow's family over time in the event both he and Becker were to die on the trip: if that were to occur, Daughter could deliver the document, which had been executed prior to Gzaskow's death, and claim survivor benefits that otherwise would never be paid due to Becker's concurrent death. PERA disputed this claim of consultation, as well as Plaintiffs' additional claim that PERA would not be prejudiced by cancellation of the deselection. Resolution of these issues may be material to construction of Section 10-11-116(E), *see Helman*, 1994-NMSC-023, ¶¶ 19-20 (explaining that a statute will not be interpreted literally if such construction is unreasonable), as well as any request for cancellation to the extent that

22

it might call for the exercise of discretion.

**{32}** Second, Plaintiffs alleged that Gzaskow had not delivered with his signed deselection form the other documentation specified in 2.80.1100.11 NMAC. PERA disputed this claim, arguing that those facts were yet to be established by Plaintiffs. Resolution of this dispute in favor of Plaintiffs was the basis for one of their claims of entitlement to cancellation of the deselection.

**{33}** Third, and most fundamentally, the factual lynchpin of Plaintiffs' claim of entitlement to cancel and void the deselection of Becker and designation of Daughter as survivor beneficiary was the notion that his execution and delivery of the document to PERA was a mistake, i.e., that at the time Gzaskow signed and delivered the document he did not intend to accomplish the deselection. PERA also disputed this contention.

**{34}** PERB is no less well positioned to resolve these disputed factual issues than the district court. For this reason as well, *Smith*'s declaratory judgment exception for the exhaustion doctrine is not available to Plaintiffs.

**C.      Plaintiffs' Remaining Arguments**

**1.      PERB's Equity Jurisdiction**

**{35}** Citing *AA Oilfield Service, Inc. v. New Mexico Corp. Comm'n*, 1994-NMSC-085, ¶ 18, 118 N.M. 273, 881 P.2d 18 (recognizing that an agency possessed only

quasi-judicial powers which did not encompass the authority to grant equitable remedy), and *Leonard v. Payday Professional/Bio-Cal Co.*, 2008-NMCA-034, ¶ 12, 143 N.M. 637, 179 P.3d 1245 (concluding that Worker's Compensation Judge did not have authority to issue injunctions under the Worker's Compensation Act), Plaintiffs argue that PERB has only "quasi-judicial" powers and lacks authority or jurisdiction to grant equitable relief. Because *Smith* recognizes claims over which the administrative agency lacks jurisdiction as exempt from the exhaustion requirement, 2007-NMSC-055, ¶ 27, Plaintiffs urge that the district court erred in dismissing their claim for injunctive relief against PERA.

{36} We can assume for purposes of discussion that PERB lacks the power to grant an equitable remedy. However, Plaintiffs overlook a threshold consideration that moots the point.

{37} The key question in this case is whether, under the language of Section 10-11-116(E), the Legislature has authorized reversal—whether articulated as cancellation, rescission or otherwise—of a deselection on grounds of mistake or, indeed, any grounds. If the answer is yes, then PERB can grant such a remedy pursuant to Section 10-11-120(A). In taking such action PERB could not be characterized as "enjoining" PERA to do anything: PERB exercises ultimate control and authority over PERA, i.e., PERA personnel effectively act on behalf of, and in the name of, PERB. Section 10-

11-130. Therefore, if on appeal PERB were to reverse the 2015 denial of Plaintiffs' request to cancel the deselection, PERB effectively would only be reconsidering its own institutional decision, the same as any other decision that it might make to reverse a previous PERA denial of benefits. In other words, if Section 10-11-116(E) permits reversal of mistaken deselections, then Section 10-11-120 provides an adequate legal remedy that precludes Plaintiffs' claim for injunctive relief by the district court. [2] *Dydek v. Dydek*, 2012-NMCA-088, ¶ 53, 288 P.3d 872 ("[E]quity will not act if there is a complete and adequate remedy at law." (internal quotation marks and citation omitted)).

{38}     Alternatively, if under Section 10-11-116(E) the Legislature has not authorized

---

[2] Because an agency would never enjoin itself as opposed to simply reverse its decision, it is illogical to argue the lack of equitable jurisdiction as a means of circumventing the requirement to exhaust administrative remedies: the agency can provide a sufficient administrative remedy whether or not it lacks authority to grant injunctive relief. An exception might exist, however, where the administrative agency is addressing one party's relative rights and obligations as against another party. *See, e.g.*, *AA Oilfield Serv., Inc.,* 1994-NMSC-085 (common carrier opposed competing common carrier's application for transfer of certificate of public convenience and necessity); *Leonard*, 2008-NMCA-034 (addressing worker's pursuit of worker compensation benefits against employer and insurer). Only in that situation, not present here, might the first party have reason to seek equitable relief.

We also observe that most any challenge to an administrative agency's decision may be articulated in terms of a request for injunctive relief. If one can circumvent administrative remedies simply by seeking the court's order enjoining the agency to reverse its decision, the exception will swallow the rule. For that reason as well, we would not expect injunctive relief to be a frequent basis for not exhausting administrative remedies.

reversal of a mistaken deselection, then the courts have no more authority—equitable or otherwise—to reverse the deselection than that which PERB statutorily possesses. That is, if Section 10-11-116(E) is construed to not permit reversal of a deselection, then as a matter of law there could be no equitable cause of action to accomplish the same result.

{39} That a court may not exercise an equitable remedy to accomplish a goal that a statute has foreclosed is well recognized by courts throughout the United States. In *Immigration & Naturalization Service v. Pangilinan*, 486 U.S. 875, 882-83 (1988), the United States Supreme Court reversed the Ninth Circuit Court of Appeals' decision to use equitable authority to confer citizenship upon two Filipino citizens who had served in the United States armed forces during World War II in contravention of a federal statute explicitly setting a cutoff date by which the two individuals should have applied for citizenship, but did not. The *Pangilinan* court stated, "[I]t is well established that 'courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.' " *Id*. at 883 (alteration omitted) (quoting *Hedges v. Dixon Cty.*, 150 U.S. 182, 192 (1893)). The *Pangilinan* court continued, " 'A [c]ourt of equity cannot . . . create a remedy in violation of law.' " *Id*. (quoting *Rees v. City of Watertown*, 86 U.S. (19 Wall.) 107, 122 (1873)). Specifically, *Pangilinan* stated that the power to grant citizenship had

not been conferred upon the federal courts as a generally applicable equitable power. *See* 486 U.S. at 883-84. Instead, because a federal statute dictates how a person may be naturalized, "[n]either by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of these [Congressional] limitations." *Id*. at 885.

{40}    Similarly, in *Westerman v. United States*, the Eighth Circuit Court of Appeals applied the equitable principle that equity follows the law, stating, "Well over a century has passed since American jurisprudence definitively established that 'courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.' " 718 F.3d 743, 752 (8th Cir. 2013) (alteration omitted) (quoting *Hedges*, 150 U.S. at 192). The Eighth Circuit decided that because the Internal Revenue Service's rights to "maximize the treasury's collection of unpaid liabilities by applying undesignated employment tax payments first toward non-trust fund taxes and then by recovering unpaid trust fund taxes from the person (Westerman) responsible for their underpayment" were " 'clearly defined and established by law, equity has no power to change or unsettle those rights[.]' " *Id*. (quoting *Magniac v. Thomson*, 56 U.S. (15 How.) 281, 299 (1853)). *See generally* 2 John Norton Pomeroy, *A Treatise on Equity Jurisprudence* § 425, at 188-90 (5th ed. 1941) ("Equity follows the law, in the sense of obeying it, conforming to its general

27

rules and policy, whether contained in the common or the statute law. . . . Courts of equity may no more disregard statutory and constitutional requirements and provisions than can courts of law. They are bound by positive provisions of a statute[.] . . . Wherever the rights of the parties are clearly governed by rules of law, courts of equity will follow such legal rules.").

{41} New Mexico courts have embraced the same principle. In *Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶¶ 3, 32, 123 N.M. 526, 943 P.2d 560, this Court declined to utilize "the court's power of equity" to affirm the district court's refusal to enforce non-consent penalty provisions of an operating agreement to drill oil and gas wells. *Nearburg* acknowledged that while it is within the discretion of the district court to decide whether equitable relief should be granted, "such discretion is not a mental discretion to be exercised as one pleases, but is a legal discretion to be exercised in conformity with the law." *Id*. ¶ 32 (alteration omitted) (quoting *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 1993-NMSC-039, ¶ 26, 115 N.M. 690, 858 P.2d 66). This Court also has observed, in declining to endorse the exercise of equitable powers to override express contractual deadlines for renewing a commercial lease, that " '[e]quity jurisdiction has never given the judiciary a roving commission' to do whatever it wishes in the name of fairness or public welfare." *United Props. Ltd. Co. v. Walgreen Props., Inc.*, 2003-NMCA-140, ¶ 19, 134 N.M. 725, 82 P.3d 535

28

*(quoting In re Adoption of Francisco A.*, 1993-NMCA-144, ¶ 88, 116 N.M. 708, 866 P.2d 1175). Therefore, if under Section 10-11-116(E), the Legislature has not authorized reversal of a mistaken deselection, neither PERB (acting pursuant to its authority under Section 10-11-120) nor this Court (acting pursuant to either legal or equitable authority) may reverse the deselection.

{42}    We conclude that PERB has authority under Section 10-11-120 to address the statutory interpretation question in the first instance and determine whether a member's mistaken deselection of a survivor beneficiary may be reversed. If Plaintiffs disagree with PERB's decision, they will remain free to pursue an appeal to the district court under Section 39-3-1.1. For the present, however, it is clear that Plaintiffs must exhaust their administrative remedy. We express no opinion on the substantive question.

**2.      Invalidation of the Deselection Ab Initio**

{43}    In their pleadings Plaintiffs claim not only that the deselection of Becker and designation of Daughter as new survivor beneficiary should be *reversed*, but also that the deselection was void ab initio because: (1) Becker never gave her consent; and (2) documents required by 2.80.1100.11 NMAC did not accompany the deselection form. The two claims are analytically separate: even if under Section 10-11-116(E) a deselection, if mistaken but otherwise valid, may not be reversed, that would not

necessarily preclude a determination that conditions precedent prevented the deselection from ever taking effect. Indeed, the second claim logically should be addressed first, because if the deselection was null and void, then there is no need to address whether it can be reversed.

{44}     These, too, are questions that PERB may address during any Section 10-11-120 appeal, with the opportunity for review by the district court on appeal. That is, on these questions as well, Plaintiffs must exhaust their administrative remedy. We express no opinion on the issue, including the subsidiary questions whether Becker has any property interest in a survivor benefit, whether the spousal consent language in Section 10-11-116(A) applies only to pre-retirement spouses, and whether the failure to submit with the deselection form any of the documentation described in 2.80.1100.11 NMAC would operate to void the deselection.

## III.   CONCLUSION

{45}     We affirm the district court's dismissal of Plaintiffs' Complaint on grounds that they must exhaust the administrative remedy afforded them pursuant to Section 10-11-120.

{46}     **IT IS SO ORDERED.**


_____

**HENRY M. BOHNHOFF, Judge**

30

**WE CONCUR:**

_____
**LINDA M. VANZI, Chief Judge**

_____
**JAMES J. WECHSLER, Judge**

31